UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| RECO RECARDO DOUGLAS, | ) |
| *Plaintiff*, | ) Case No. 1:24-cv-2 |
| v. | ) Judge Atchley |
| JOHN DOE, *et al.*, | ) Magistrate Judge Steger |
| *Defendants*. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff, an inmate in the custody of the Tennessee Department of Correction ("TDOC"), filed a (1) pro se civil rights action under 42 U.S.C. § 1983 [Doc. 1] regarding events that transpired at the Morgan County Correctional Complex ("MCCX"), (2) motion for extension of notary services [Doc. 5], (3) motion for leave to proceed *in forma pauperis* [Doc. 6], (4) motion to appoint counsel [Doc. 7], and (5) motion to produce documents [Doc. 8]. For the reasons set forth below, the Court will **GRANT** Plaintiff's motion to proceed as a pauper, **DENY** his motion to appoint counsel, **DISMISS** Plaintiff's federal claims for failure to state a claim upon which § 1983 relief may be granted, and **DENY** Plaintiff's remaining motions as moot.

**I.    MOTION TO PROCEED *IN FORMA PAUPERIS***

It appears from Plaintiff's motion to proceed *in forma pauperis* [Doc. 6] that he lacks the financial resources to pay the filing fee in advance. Accordingly, pursuant to 28 U.S.C. § 1915, this motion is **GRANTED**.

Plaintiff is **ASSESSED** the civil filing fee of $350.00. 28 U.S.C. §1914(a). The custodian of Plaintiff's inmate trust account is **DIRECTED** to submit to the Clerk, U.S. District Court, 900 Georgia Avenue, Suite 309, Chattanooga, Tennessee 37402 twenty percent (20%) of Plaintiff's preceding monthly income (or income credited to his trust account for the preceding month), but

only when such monthly income exceeds ten dollars ($10.00), until the full filing fee has been paid to the Clerk. 28 U.S.C. § 1915(b)(2).

To ensure compliance with this fee-collection procedure, the Clerk will be **DIRECTED** to mail a copy of this Memorandum Opinion and Order to the custodian of inmate accounts at the institution where Plaintiff is now confined. The Clerk will also be **DIRECTED** to furnish a copy of this Memorandum Opinion and Order to the Court's financial deputy. This Memorandum Opinion and Order shall be placed in Plaintiff's prison file and follow him if he is transferred to another correctional institution.

## II.    MOTION TO APPOINT COUNSEL

Plaintiff requests appointment of counsel because he is indigent, his imprisonment limits his ability to litigate this case, counsel would better enable Plaintiff to present evidence and cross-examine witnesses at trial, and Plaintiff's attempts to find counsel on his own have proved unfruitful [Doc. 7].

Pursuant to 28 U.S.C. § 1915(e)(1) "[t]he court *may* request an attorney to represent any person unable to afford counsel" (emphasis added). Appointment of counsel in a civil proceeding is not a constitutional right, but a privilege justified only in exceptional circumstances. *Lavado v. Keohane*, 992 F. 2d 601, 605–06 (6th Cir. 1993). A district court has discretion to determine whether to appoint counsel for an indigent plaintiff. *Reneer v. Sewell*, 975 F.2d 258, 261 (6th Cir. 1992). In exercising that discretion, the district court should consider the nature of the case, whether the issues are legally or factually complex, and the plaintiff's ability to present his claims. *Lavado*, 992 F.2d at 605–06.

As to the first two factors, this is a complaint under § 1983 arising out of events during Plaintiff's incarceration, none of which are factually or legally complex. As to the third factor, it

2

appears Plaintiff can adequately present his claims. And Plaintiff's indigency and his lack of legal training are typical of prisoners representing themselves.

Thus, Plaintiff has not established that this is an exceptional case that justifies the Court appointing him counsel, and his request for appointment of counsel [Doc. 7] is **DENIED**.

### III. SCREENING OF COMPLAINT

#### A. Screening Standard

Under the Prison Litigation Reform Act ("PLRA"), district courts must screen prisoner complaints and *sua sponte* dismiss any claims that are frivolous or malicious, fail to state a claim for relief, or are against a defendant who is immune. *See, e.g.,* 28 U.S.C. §§ 1915(e)(2)(B) and 1915A; *Benson v. O'Brian*, 179 F.3d 1014 (6th Cir. 1999). The dismissal standard articulated by the Supreme Court in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) "governs dismissals for failure state a claim under [28 U.S.C. §§ 1915(e)(2)(B) and 1915A] because the relevant statutory language tracks the language in Rule 12(b)(6)" of the Federal Rules of Civil Procedure. *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010). Thus, to survive an initial review under the PLRA, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).

Allegations that give rise to a mere possibility that a plaintiff might later establish undisclosed facts supporting recovery are not well-pled and do not state a plausible claim. *Twombly*, 550 U.S. at 555, 570. Further, formulaic and conclusory recitations of the elements of a claim which are not supported by specific facts are insufficient to state a plausible claim for relief. *Iqbal*, 556 U.S. at 681. However, courts should liberally construe pro se pleadings filed in civil rights cases and hold them to a less stringent standard than "formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972).

3

To state a claim against under 42 U.S.C. § 1983, Plaintiff must establish that a "person" acting "under color of" state law deprived him of "any rights, privileges, or immunities secured by the Constitution and laws" of the United States. 42 U.S.C. § 1983.

B.   **Plaintiff's Allegations**

Plaintiff's inmate trust account has been overcharged in violation of TDOC and federal policies [*See, generally*, Doc. 1]. And his grievances about the issue and requests for refunds are ignored [*Id*. at 3, 5, 6]. Defendants know this "forgery and fraud" would result in Plaintiff's inability to buy hygiene items, food, and send legal mail [*Id*. at 6]. Moreover, Defendant Brandy Huttson has failed Plaintiff's hygiene needs and cut off his pin number in violation of TDOC policies, which prevents him from calling his attorney and family members [*Id*. at 2].

Defendants fail to keep food trays wrapped up, despite knowing that Covid-19 is in Tennessee prisons [*Id*. at 7]. And diet trays are always dirty with food in their corners [*Id*.]. The food that is served smells bad and is "uncooked, spoiled, sometimes mo[l]ded" [*Id*.]. Plaintiff's dietary needs–fresh cooked food–are ignored [*Id*.]. Plaintiff is served raw potatoes and generic noodles "with evil intent motives" [*Id*.].

Plaintiff has been "subjected to retaliation" [*Id*. at 8]. Legal mail is opened or tampered with [*Id*. at 32, 33].

On June 11, 2023, at approximately 4:00 a.m., Plaintiff was placed in a medical room "for repeatedly vomiting" [*Id*. at 28]. No one "reasonab[]ly respond[ed]" to Plaintiff's condition until the shift change [*Id.*]. The incident was ruled an overdose even though Plaintiff does not drink or do drugs [*Id*. at 29].

Defendants "disregarded and failed to protect" Plaintiff on October 28, 2023[1] when they let another inmate in his cell for the purpose of causing Plaintiff harm [*Id*. at 9]. Plaintiff "went without hyg[ie]ne" and was not fed after the incident [*Id*.]. Plaintiff also received "three class A write ups" for the "accident" [*Id*.].

As a result of these incidents, Plaintiff filed this action seeking monetary damages for the alleged violations of federal and state law [*Id*. at 11].

### C. Analysis

#### 1. Inmate Account

Plaintiff alleges that Defendants have engaged in forgery and fraud by overcharging his inmate account. But the Due Process Clause of the Fourteenth Amendment is not violated when a state employee deprives an individual of property, provided that the state makes available a meaningful post-deprivation remedy. *Parratt v. Taylor*, 451 U.S. 527, 543 (1981), *overruled on other grounds by Daniels v. Williams*, 474 U.S. 327 (1986); *see also Hudson v. Palmer*, 468 U.S. 517, 533 (1984) (extending *Parratt*'s holding to intentional deprivations of property). Plaintiff has not pled that Tennessee's post-deprivation procedures are inadequate as is necessary to sustain his § 1983 claim. *See Vicory v. Walton*, 721 F.2d 1062, 1063 (6th Cir. 1983). Additionally, the Court notes that Tennessee law provides for the recovery of personal property. *See McQuiston v. Ward*, No. 2001-201-COA-R3-CV, 2001 WL 839037, at * 1 (Tenn. Ct. App. July 25, 2001) (citing to Tenn. Code. Ann. § 29-30-101 and § 29-30-201). Accordingly, this allegation fails to state a claim upon which § 1983 relief may be granted, and it will be **DISMISSED**.

#### 2. Grievance Procedure

To the extent Plaintiff complains that his grievances are ignored or resolved

---

[1] Plaintiff asserts that Defendants failed to protect him on "10/28/22" from an incident on "10/28/23" [*Id*. at 9]. To the benefit of Plaintiff, the Court presumes that 2023 is the year the incident occurred.

5

unsatisfactorily, the Court notes that inmates do not have a constitutional right to a grievance process, and therefore, no concomitant right to have it work effectively. *Jackson v. Gordon*, 145 F. App'x 774, 777 (3d Cir. 2005) ("Prison inmates do not have a constitutionally protected right to a grievance process."); *LaFlame v. Montgomery Cnty. Sheriff's Dep't*, 3 F. App'x 346, 348 (6th Cir. 2001) (holding that plaintiff's allegation that jail staff ignored the grievances he filed did not state a § 1983 claim "because there is no inherent constitutional right to an effective prison grievance procedure"); *Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996) ("Accordingly, a state's inmate grievance procedures do not give rise to a liberty interest protected by the Due Process Clause."). Therefore, any claims related to the grievance procedure and Defendants' response to Plaintiff's grievances are **DISMISSED**.

### 3. Failure to Follow Policies

Next, Plaintiff cannot sustain a § 1983 claim on allegations that Defendants fail to follow institutional policies and procedures, as TDOC policies are not matters of federal law. *See Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982) (holding claims under § 1983 can only be brought for "deprivation of rights secured by the constitution and laws of the United States"); *Stanley v. Vining*, 602 F. 3d 767, 769 (6th Cir. 2010) (stating that "[i]t has long been established that violation of a state statute or regulation is insufficient alone to make a claim cognizable under § 1983"). Accordingly, any claims relating to Defendants' failure to follow institutional policy are **DISMISSED**.

### 4. Use of Telephone

Plaintiff maintains that his pin was cut off, thereby preventing him from making telephone calls. While the First Amendment protects Plaintiff's right to communicate with the outside world, it does not provide him with a per se right to a telephone to do so. *See Washington v. Reno*, 35 F.3d 1093, 1099 (6th Cir. 1994) ("While prisoners retain the right to communicate with friends, family, and counsel while in prison, they do not have a right to unlimited telephone calls."); *Miles*

*v. Scanlon*, No. 1:21-CV-74, 2021 WL 1809834, at *5 (W.D. Mich. May 6, 2021) (holding prisoners "do not have a constitutional right to a particular form of communication" under the First Amendment). Therefore, Plaintiff cannot sustain a claim against Defendant Brandy Huttson because he could not place telephone calls after Defendant Huttson cut off Plaintiff's pin, and this claim is **DISMISSED**.[2]

### 5. Conditions of Confinement

Plaintiff also claims that certain conditions of his confinement, including the food, cleanliness, and access to personal hygiene, violate the Constitution. The Sixth Circuit has held:

> [A] conditions-of-confinement claim has two elements. First, the deprivation alleged must be, objectively, sufficiently serious; a prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities. Second, the prison official's state of mind [must be] one of deliberate indifference to inmate health or safety.

*Spencer v. Bouchard*, 449 F.3d 721, 728 (6th Cir. 2006).

As to the first element, it is well-established that "the Constitution does not mandate comfortable prisons." *Rhodes v. Chapman* 452 U.S. 337, 349 (1981). Rather, only "extreme deprivations" that deny a prisoner "'the minimal civilized measure of life's necessities" will establish a cognizable conditions-of-confinement claim. *Hudson v. McMillan*, 503 U.S. 1, 8–9 (1992) (citations and quotations omitted). In examining such claims, the court must determine whether the risk of which the plaintiff complains is "so grave that it violates contemporary standards of decency to expose *anyone* unwillingly to such a risk. In other words, the prisoner must show that the risk of which he complains is not one that today's society chooses to tolerate." *Helling v. McKinney*, 509 U.S. 25, 36 (1993); *see also Rhodes*, 452 U.S. at 347.

---

[2] The Court notes that Plaintiff does not allege that he is unable to communicate with his family and/or attorney through letters or personal visits.

7

Plaintiff has not presented any facts from which the Court could plausibly infer that his constitutional rights were violated due to the condition of his cell, the fact that the food is not wrapped when it is served, or his lack of access to hygiene items (for an undisclosed length of time), as there is nothing in Plaintiff's allegations to suggest that these conditions created a substantial risk of harm to Plaintiff's health or safety. *See, e.g.*, *Jackson v. Coyn*, No. 3:17-CV-P61, 2017 WL 2389400, at *3 (W.D. Ky. June 1, 2017) (finding temporary inconveniences do not demonstrate that conditions "fell beneath the minimal civilized measure of life's necessities as measured by a contemporary standard of decency" and ruling alleged lack of soap, showers, towel, clean cell, eating utensils, and bed linens failed to state an objective constitutional risk); *Williams v. Delo*, 49 F.3d 442, 445 (8th Cir. 1995) (holding four-day inmate placement in strip cell without clothes, water, mattress, legal mail, or hygienic supplies did not pose objectively intolerable risk to inmate's health or safety). As to the quality of the food, Plaintiff has not alleged that the food has deprived of Plaintiff adequate nutrition to maintain good health, such that it could have violated Plaintiff's constitutional rights. *Cunningham v. Jones*, 567 F.2d 653, 659–60 (6th Cir. 1977) (providing that where a prisoner's diet is sufficient to sustain the prisoner's good health, no constitutional right has been violated). Therefore, these allegations fail to state a claim upon which § 1983 relief may be granted, and Plaintiff's conditions of confinement claims are **DISMISSED**.

### 6. Legal Mail and Retaliation

Plaintiff complains that Defendants tamper with legal mail and that they have retaliated against him. But these claims are not supported by any material facts. Such conclusory allegations fail to state a claim under § 1983. *See Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555.

### 7. Medical Care

In an exhibit to his complaint, Plaintiff complains that he was denied medical care on June

8

Case 1:24-cv-00002-CEA-CHS   Document 9   Filed 01/04/24   Page 8 of 12   PageID #: 83

11, 2023, until shift change [*See* Doc. 1 p. 28]. The denial of adequate medical treatment to a prisoner implicates the Eighth Amendment's prohibition against cruel and unusual punishment. *Estelle v. Gamble*, 429 U.S. 97 (1976). Such a claim is composed of an objective component requiring a plaintiff to show a "sufficiently serious" medical need, and a subjective component requiring the plaintiff to show the defendants acted with "deliberate indifference" to that need. *Farmer v. Brennan*, 511 U.S. 825, 834, 842 (1994). Negligence is insufficient to establish liability; deliberate indifference requires a mental state amounting to criminal recklessness. *Santiago v. Ringle*, 734 F.3d 585, 591 (6th Cir. 2013) (citing *Farmer*, 511 U.S. at 834, 839–40). Therefore, only acts or omissions that produce an "unnecessary and wanton infliction of pain" implicate the Eighth Amendment. *Wilson v. Seiter*, 501 U.S. 294, 297 (1991). Accordingly, to establish an official's liability, a prisoner must show that "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837.

A prisoner cannot state a claim of deliberate indifference by suggesting that he was misdiagnosed or not treated in a manner he desired. *Gabehart v. Chapleau*, No. 96-5050, 1997 WL 160322, at *2 (6th Cir. Apr. 4, 1997) (finding "[m]isdiagnoses, negligence, and malpractice" are not "tantamount to deliberate indifference"). As the Supreme Court has explained:

> [A]n inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind. Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Estelle*, 429 U.S. at 105–06 (internal quotation marks omitted).

9

Here, Plaintiff alleges that he was escorted to the medical unit by medical staff and placed in a room because he was vomiting [Doc. 1 p. 28]. While he complains that there was no "reasonable[] response" to his condition until shift change, vomiting can be the result of many benign causes, and he has also made no factual allegations suggesting that his condition was more than *de minimis*. *Meyers v. City of Chardon*, No. 1:14-cv-2340, 2015 WL 1648992, at *10 (N.D. Ohio Apr. 13, 2015) ("In other words, injuries such as bruises, cuts and abrasions which are treatable at home and with over-the-counter bandages or medications are not sufficiently serious to invoke the protection of the [C]onstitution.") (citation omitted). And Plaintiff has not pled any facts suggesting that medical professionals treated him with deliberate disregard to his medical needs, as opposed to making a medical judgment that immediate treatment was not necessary. The Supreme Court has explained, "[w]here a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557). Such is the case here. Therefore, Plaintiff's denial-of-medical-care claim will be **DISMISSED**.

### 8. Failure to Protect

Plaintiff maintains that Defendants "disregarded and failed to protect" him when they let another inmate in his cell for the purpose of causing Plaintiff harm [Doc. 1 at 9]. Prison officials have a duty to protect inmates from violence by other inmates and must take reasonable measures to protect their safety. *Farmer*, 511 U.S. at 832–33. But prisons are dangerous places housing violent individuals, and sometimes, fights are inevitable. *Id*. at 858 (Thomas J., concurring in judgment). Because of this reality, liability attaches to a prison official's failure to protect a prisoner only where the prisoner was "incarcerated under conditions posing a substantial risk of serious harm," and the prison official acted with deliberate indifference to the prisoner's safety. *Id*. at 834. "Deliberate indifference" means that a prison official is liable only where he knows that

the inmate faces a substantial risk of serious harm and disregards that risk. *Id*. at 837 (quotation marks omitted). Negligence is insufficient. *Santiago*, 734 F.3d at 591.

Plaintiff has not set forth any facts from which the Court could plausibly infer that any Defendant knew Plaintiff faced a substantial risk of harm at the hands of another inmate when they placed that inmate in Plaintiff's cell or failed to prevent him from entering Plaintiff's cell. Therefore, Plaintiff's allegations are conclusory, and this claim is **DISMISSED**. *See, e.g., Twombly*, 550 U.S. at 570.

### 9. Disciplinary Write-Ups

Plaintiff complains that he received three write-ups as a result of the incident with another inmate, even though he did not do anything wrong [Doc. 1 p. 9]. But inmates possess no constitutional right to be free from charges or convictions of prison disciplinary offenses. *Wolff v. McDonnell*, 418 U.S. 539, 564–71 (1974). This is true even if the charge is unfounded. *Cromer v. Dominguez*, 103 F. App'x 570, 573 (6th Cir. 2004) ("False accusations of misconduct filed against an inmate do not constitute a deprivation of constitutional rights where the charges are subsequently adjudicated in a fair hearing."); *Person v. Campbell*, No. 98–5638, 1999 WL 454819, at *1 (6th Cir. June 21, 1999) ("[T]he filing of false disciplinary charges against an inmate does not constitute a constitutional violation redressable under § 1983."). Therefore, this allegation fails to state a § 1983 claim, and it is **DISMISSED**.

### 10. State Law Claims

Because the Court dismisses all Plaintiff's federal claims, the Court will exercise its discretion to decline to exercise supplemental jurisdiction over the remaining state law claims by dismissing these claims without prejudice. 28 U.S.C. § 1367(c)(3); *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726–727 (1966) ("[I]f the federal claims are dismissed before trial, . . . the state claims should be dismissed as well.").

## IV. CONCLUSION

For the reasons set forth above:

1. Plaintiff's motion for leave to proceed *in forma pauperis* [Doc. 6] is **GRANTED**;

2. Plaintiff is **ASSESSED** the civil filing fee of $350.00;

3. The custodian of Plaintiff's inmate trust account is **DIRECTED** to submit the filing fee to the Clerk in the manner set forth above;

4. The Clerk is **DIRECTED** to mail a copy of this Memorandum Opinion and Order to the custodian of inmate accounts at the institution where Plaintiff is now confined and to the Court's financial deputy;

5. Plaintiff's motion to appoint counsel [Doc. 7] is **DENIED**;

6. All Plaintiff's federal claims are **DISMISSED** with prejudice for failure to state a claim upon which relief may be granted;

7. Plaintiff's state-law claims are **DISMISSED** without prejudice;

8. Plaintiff's remaining motions [Doc. 5, 8] are **DENIED** as moot; and

9. The Court **CERTIFIES** that any appeal from this action would not be taken in good faith and would be totally frivolous. *See* Rule 24 of the Federal Rules of Appellate Procedure.

**SO ORDERED**.

*/s/ Charles E. Atchley, Jr.*
**CHARLES E. ATCHLEY, JR.**
**UNITED STATES DISTRICT JUDGE**